Justin P. Stalpes
BECK, AMSDEN & STALPES, pllc
1946 Stadium Drive, Suite 1
Bozeman, MT 59715
Tel:   (406) 586-8700
Fax:   (406) 586-8960
justin@becklawyers.com
info@becklawyers.com

*Attorneys for Plaintiff*

\* \* \* \* \* \* \*
# MONTANA FIFTH JUDICIAL DISTRICT COURT
## BEAVERHEAD COUNTY
\* \* \* \* \* \* \*

| DON GUIBERSON, <br><br> Plaintiff, <br><br> vs. <br><br> MONSANTO COMPANY, a corporation, <br><br> Defendant. | Cause No. DV-20-14309 <br><br> SUMMONS <br><br> Judge Assigned <br> LUKE BERGER |
|---|---|

**THE STATE OF MONTANA TO:**

MONSANTO COMPANY
c/o Corporation Service Company
26 W. Sixth Ave.
P.O. Box 1691
Helena, MT 59624

You are hereby summoned to answer the complaint in this action filed in the office of the clerk of this Court, a copy of which is herewith served upon you, and

**EXHIBIT 1**

to file your answer and serve a copy thereof upon the Plaintiff's attorney, within twenty-one (21) days after the service of this summons, exclusive of the day of service; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint. You are required to include an appearance fee when filing your answer.

WITNESS my hand and the seal of said Court, this 26th day of August 2020.

Carly Jay Anderson
_____
Clerk

(COURT SEAL)

By: _____
Deputy Clerk



Justin P. Stalpes
BECK, AMSDEN & STALPES, pllc
1946 Stadium Drive, Suite 1
Bozeman, MT 59715
Tel:  (406) 586-8700
Fax:  (406) 586-8960
justin@becklawyers.com
info@becklawyers.com

*Attorneys for Plaintiff*

\* \* \* \* \* \* \*
## MONTANA FIFTH JUDICIAL DISTRICT COURT
## BEAVERHEAD COUNTY
\* \* \* \* \* \* \*

| DON GUIBERSON,<br><br>Plaintiff,<br><br>vs.<br><br>MONSANTO COMPANY, a corporation,<br><br>Defendant. | Cause No. DV-20-14309<br><br>**COMPLAINT FOR DAMAGES and JURY DEMAND** |
|---|---|

Plaintiff Don Guiberson brings this Complaint for damages against defendant Monsanto Company ("Monsanto"). Plaintiff alleges as follows:

**EXHIBIT 1**

## PARTIES, JURISDICTION, AND VENUE

1. Don Guiberson is an individual residing in Dillon, Montana.

2. Monsanto Company is a Delaware Corporation with its principal place of business in St. Louis, Missouri. Monsanto sells its products throughout the United States, including in Montana. Monsanto Company is registered with the Montana Secretary of State and its registered agent is located at 26 W Sixth Ave, Helena, MT 59624.

3. Monsanto designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the commercial herbicide Roundup.

4. This Court has personal jurisdiction over Monsanto because Monsanto transacts business in and is a corporation doing business within Montana. Monsanto knows that its Roundup products are and were sold throughout Montana, and, more specifically, caused Roundup to be sold to Plaintiff in Montana. In addition, Monsanto maintains sufficient contacts with the State of Montana such that this Court's exercise of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

5. Monsanto advertises and sells goods, specifically Roundup, throughout Montana. It derived substantial revenue from goods and products used in Montana. It expected its acts to have consequences within Montana and derived substantial revenue from interstate commerce. Specific to this case, Monsanto

BECK, AMSDEN & STALPES, pllc
*COMPLAINT FOR DAMAGES and JURY DEMAND*
Page 2

**EXHIBIT 1**

engaged in the business of developing, manufacturing, testing, packaging, marketing, distributing, labeling, and selling Roundup. Monsanto purposefully availed itself of the privilege of conducting activities within Montana, thus invoking the benefits and protections of its laws.

6. This Court has jurisdiction over the subject matter of this litigation pursuant to Mont. Code Ann. § 3-5-302.

7. Venue properly lies in Beaverhead County.

## GENERAL ALLEGATIONS

8. Glyphosate, which is an active ingredient in Roundup, is a carcinogen. It has been identified as causing various forms of cancer, in particular Non-Hodgkin's Lymphoma.

9. Plaintiff, who used Roundup extensively, now suffers from the effects of Non-Hodgkin's Lymphoma.

10. "Roundup" refers to all formulations of Monsanto's Roundup products, including, but not limited to, Roundup Concentrate Poison Ivy and Tough Brush Killer 1, Roundup Custom Herbicide, Roundup D-Pak herbicide, Roundup Dry Concentrate, Roundup Export Herbicide, Roundup Fence & Hard Edger 1, Roundup Garden Foam, Weed & Grass Killer, Roundup Grass and Weed Killer, Roundup Herbicide, Roundup Original 2k herbicide, Roundup Original II Herbicide, Roundup Pro Concentrate, Roundup Prodry Herbicide, Roundup

**EXHIBIT 1**

Promax, Roundup Quik Stik Grass and Weed Killer, Roundup Quikpro Herbicide, Roundup Rainfast Concentrate Weed & Grass Killer, Roundup Rainfast Super Concentrate Weed & Grass Killer, Roundup Ready-to-Use Extended Control Weed & Grass Killer 1 Plus Weed Preventer, Roundup Ready-to-Use Weed & Grass Killer, Roundup Ready-to- Use Weed and Grass Killer 2, Roundup Ultra Dry, Roundup Ultra Herbicide, Roundup Ultramax, Roundup VM Herbicide, Roundup Weed & Grass Killer Concentrate, Roundup Weed & Grass Killer Concentrate Plus, Roundup Weed & Grass killer Ready-to-Use Plus, Roundup Weed & Grass Killer Super Concentrate, Roundup Weed & Grass Killer1 Ready-to-Use, Roundup WSD Water Soluble Dry Herbicide Deploy Dry Herbicide, or any other formulation containing the active ingredient glyphosate.

11. Monsanto is the world's leading producer of glyphosate.

12. Monsanto discovered the herbicidal properties of glyphosate during the 1970's and developed it as a broad-spectrum herbicide used to kill weeds and grasses known to compete with commercial crops grown around the globe.

13. Sprayed as a liquid, plants absorb glyphosate directly through their leaves, stems, and roots; and detectable quantities accumulate in the plant tissues.

14. Roundup was introduced in 1974 and is today one of the world's most widely used herbicides.

**EXHIBIT 1**

15. In all this time, farmers, ranchers and consumers have used Roundup unaware it is a carcinogen.

16. Monsanto represented to farmers, ranchers and consumers that its spray-on glyphosate-based herbicides, including Roundup, were "safer than table salt" and "practically non-toxic" to mammals, birds, and fish.

17. Monsanto also represented to farmers, ranchers and consumers:

    a. Remember that environmentally friendly Roundup herbicide is biodegradable. It won't build up in the soil so you can use Roundup with confidence along customers' driveways, sidewalks and fences.

    b. And remember that Roundup is biodegradable and won't build up in the soil. That will give you the environmental confidence you need to use Roundup everywhere you've got a weed, brush, edging or trimming problem.

    c. Roundup biodegrades into naturally occurring elements.

    d. You can apply Roundup with "confidence because it will stay where you put it" it bonds tightly to soil particles, preventing leaching. Then, soon after application, soil microorganisms biodegrade Roundup into natural products.

    e. Glyphosate is less toxic to rats than table salt following acute oral ingestion.

    f. Glyphosate's safety margin is much greater than required. It has over a 1,000-fold safety margin in food and over a 700-fold safety margin for workers who manufacture it or use it.

    g. You can feel good about using herbicides by Monsanto. They carry a toxicity category rating of 'practically non-toxic' as it pertains to mammals, birds and fish.

   h. Roundup can be used where kids and pets will play and breaks down into natural material.

18. On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with the New York Attorney General, in which Monsanto agreed, among other things, "to cease and desist from publishing or broadcasting any advertisements [in New York] that represent, directly or by implication" that:

   a. its glyphosate-containing pesticide products or any component thereof are safe, non-toxic, harmless or free from risk;

   b. its glyphosate-containing pesticide products or any component thereof manufactured, formulated, distributed or sold by Monsanto are biodegradable;

   c. its glyphosate-containing pesticide products or any component thereof stay where they are applied under all circumstances and will not move through the environment by any means;

   d. its glyphosate-containing pesticide products or any component thereof are "good" for the environment or are "known for their environmental characteristics;"

   e. glyphosate-containing pesticide products or any component thereof are safer or less toxic than common consumer products other than herbicides; and

   f. its glyphosate-containing products or any component thereof might be classified as "practically non-toxic."

19. However, Monsanto did not alter its advertising in the same manner in any state other than New York, and, on information and belief, still has not done so today.

20. The International Agency for Research on Cancer ("IARC") is the specialized intergovernmental agency that the World Health Organization ("WHO") of the United Nations tasked with conducting and coordinating research into the causes of cancer.

21. An IARC Advisory Group to Recommend Priorities for IARC Monographs during 2015–2019 met in April 2014. IARC set glyphosate for review in 2015-2016.

22. On March 24, 2015, after IARC reviewed numerous studies, many of which had been in Monsanto's possession since as early as 1985, the IARC's working group published its conclusion that the glyphosate contained in Monsanto's Roundup herbicide, is a Class 2A "probable carcinogen" as demonstrated by the mechanistic evidence (genotoxicity and oxidative stress) of carcinogenicity in humans and sufficient evidence of carcinogenicity in animals.

23. The IARC's full Monograph was published on July 29, 2015, and established glyphosate as a class 2A probable carcinogen to humans. According to the authors, glyphosate demonstrated sufficient mechanistic evidence to warrant a 2A classification based on evidence of carcinogenicity in humans and animals.

24. The IARC Working Group found an increased risk between exposure to glyphosate and Non-Hodgkin's Lymphoma ("NHL") and several subtypes of NHL, and the increased risk continued after adjustment for other pesticides.

**EXHIBIT 1**

25. The IARC also found that glyphosate caused DNA and chromosomal damage in human cells.

26. Despite the new classification by the IARC, Monsanto has had ample evidence of glyphosate and Roundup's genotoxic properties for decades.

27. Genotoxicity refers to chemical agents capable of damaging the DNA within a cell through genetic mutations, which is a process that is believed to lead to cancer.

28. In 1997, Chris Clements published "Genotoxicity of select herbicides in Rana catesbeiana tadpoles using the alkaline single-cell gel DNA electrophoresis (comet) assay." The study found that tadpoles exposed to Roundup showed significant DNA damage when compared with unexposed control animals.

29. In 2003, Lennart Hardell and Mikael Eriksson published the results of two case controlled studies on pesticides as a risk factor for NHL and hairy cell leukemia. The study concluded that glyphosate had the most significant relationship to NHL among all herbicide studies with an increased odds ratio of 3:11.

30. In 2003, AJ De Roos published a study examining the pooled data of mid-western farmers, examining pesticides and herbicides as risk factors for NHL. The study, which controlled for potential confounders, found a relationship between increased NHL incidence and glyphosate.

**EXHIBIT 1**

31. In 2006, César Paz-y-Miño published a study examining DNA damage in human subjects exposed to glyphosate. The study produced evidence of chromosomal damage in blood cells showing significantly greater damage after exposure to glyphosate than before in the same individuals, suggesting that the glyphosate formulation used during aerial spraying had a genotoxic effect on exposed individuals.

32. In 2008, Mikael Eriksson published a population based case-control study of exposure to various pesticides as a risk factor for NHL. This strengthened previous associations between glyphosate and NHL.

33. In spite of this knowledge, Monsanto continued to issue broad and sweeping statements suggesting that Roundup was, and is, safer than ordinary household items such as table salt, despite a lack of scientific support for the accuracy and validity of these statements and, in fact, voluminous evidence to the contrary.

34. These statements and representations have been made with the intent of inducing Plaintiff, the agricultural community, and the public at large to purchase, and increase the use of, Roundup for Monsanto's pecuniary gain, and in fact did induce Plaintiff to use Roundup.

35. Monsanto failed to appropriately and adequately inform and warn Plaintiff of the serious and dangerous risks associated with the use of and exposure

to glyphosate and/or Roundup, including, but not limited to, the risk of developing NHL, as well as other severe and personal injuries, which are permanent and/or long-lasting in nature, cause significant physical pain and mental anguish, diminished enjoyment of life, and the need for medical treatment, monitoring, and/or medications.

36. In 2019, after using and being exposed to Roundup for at least 19 years, Plaintiff Don Guiberson developed cancer. Specifically, Plaintiff was diagnosed with Non-Hodgkin's Lymphoma.

37. Mr. Guiberson underwent significant treatment for several years and incurred considerable medical expenses.

38. For years after Mr. Guiberson developed cancer, Plaintiff was unaware of any causal link between Roundup and cancer.

39. By reason of the foregoing acts and omissions, Plaintiff seeks compensatory damages as a result of Plaintiff's use of, and exposure to, Roundup, which caused or was a substantial contributing factor in causing Mr. Guiberson to suffer from cancer. Plaintiff has endured and continues to suffer pain, emotional and mental anguish, medical expenses, and other economic and non-economic damages.

## COUNT I – Strict Products Liability (Design Defect)

40. Plaintiff re-alleges each paragraph above as if fully set forth herein.

41. At all times relevant, Monsanto designed, researched, manufactured, tested, advertised, promoted, sold, and distributed Roundup as hereinabove described that was used by Plaintiff.

42. Roundup was expected to and did reach consumers and persons coming into contact with it without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed.

43. Roundup was and is defective because it was and is dangerous to an extent beyond that which an ordinary consumer would anticipate.

44. Plaintiff was exposed to Roundup without knowledge of Roundup's dangerous characteristics.

45. At the time of Plaintiff's use of and exposure to Roundup, Roundup was being used for the purposes and in a manner normally intended, as a broad-spectrum herbicide.

46. Plaintiff's use of, and exposure to, Roundup caused or was a substantial contributing factor in causing Mr. Guiberson to suffer from cancer. Plaintiff has endured and continues to suffer pain, emotional and mental anguish, medical expenses, and other economic and non-economic damages.

### COUNT II – Strict Products Liability (Failure to Warn)

47. Plaintiff re-alleges each paragraph above as if fully set forth herein.

48.  At all times relevant, Monsanto designed, researched, manufactured, tested, advertised, promoted, sold, and distributed Roundup as hereinabove described that was used by Plaintiff.

49.  Warnings or instructions regarding the full and complete risks of Roundup and glyphosate-containing products should have been prominently included with Roundup because of the risks of harm associated with the use of and/or exposure to such products.

50.  At all relevant times, Roundup was defective because it was not accompanied by proper warnings regarding its carcinogenic qualities and possible side effects, including, but not limited to, developing NHL as a result of exposure and use.

51.  Had Plaintiff been appropriately warned, he would not have used Roundup or would have taken additional precautions to limit Roundup exposure.

52.  Plaintiff's use of, and exposure to, Roundup caused or was a substantial contributing factor in causing Mr. Guiberson to suffer from cancer. Plaintiff has endured and continues to suffer pain, emotional and mental anguish, medical expenses, and other economic and non-economic damages.

### COUNT III (Violation of Montana's Consumer Protection Act)

53.  Plaintiff re-alleges each paragraph above as if fully set forth herein.

**EXHIBIT 1**

54. At the time that Plaintiff was using and being exposed to Roundup, Defendant Monsanto was aware of the risk that Roundup posed to consumers, such as Plaintiff, related to cancer and specifically NHL.

55. In violation of Montana's Consumer Protection Act, Defendant Monsanto engaged in deceptive trade practices described herein in the marketing and sale of Roundup by misrepresenting and/or failing to warn about the risk of cancer posed by Roundup.

56. Plaintiff has been injured as a direct and proximate result of Defendant's conduct.

## COUNT IV – (Punitive Damages)

57. Plaintiff re-alleges each paragraph as if fully set forth herein.

58. Defendant knew or should have known about the risks posed by Roundup, but recklessly failed to warn consumers. Instead, as alleged above, Monsanto promoted Roundup without regard for its toxic effects. Defendant deliberately proceeded to act in conscious disregard or indifference to a high probability of injury. Defendant's acts demonstrate indifference to the health and well-being of consumers, including Plaintiff.

59. Plaintiff is entitled to punitive damages in an amount sufficient to punish Monsanto and deter it and other companies from acting in this manner in the future.

BECK, AMSDEN & STALPES, pllc
*COMPLAINT FOR DAMAGES and JURY DEMAND*
Page 13

**EXHIBIT 1**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for all the damages allowed by law, including but not limited to:

1. All damages, special and general, recoverable under Montana law, including but not limited to all economic and non-economic damages in a reasonable sum to be proven at trial;

2. Punitive damages in a sufficient amount to discourage Defendant Monsanto and others from engaging in like conduct in the future; and,

3. Such other relief, including attorneys' fees and pre or post-judgment interest, as the Court deems just and proper under the circumstances, or that is appropriate under law or equity.

## REQUEST FOR JURY TRIAL

Plaintiff requests that all issues of fact be determined by a twelve-person jury.

DATED this 26th day of August 2020.

BECK, AMSDEN & STALPES, PLLC

JUSTIN P. STALPES, ESQ.

*Attorneys for Plaintiff*

BECK, AMSDEN & STALPES, pllc
*COMPLAINT FOR DAMAGES and JURY DEMAND*
Page 14

**EXHIBIT 1**